UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MICHAEL T. SHARP, | : | |
|---|---|---|
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 09-1110 |
| v. | : | |
| | : | |
| PENSKE BUICK GMC, INC., | : | |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                                                                                                                   February 18, 2010

## I.    INTRODUCTION

Plaintiff Michael Sharp (hereinafter "Plaintiff") commenced this action on March 13, 2009, alleging in his Complaint that Defendant Penske Buick GMC, Inc. (hereinafter "Defendant") unlawfully discriminated against him when it terminated him because of his age. (Pl. Compl., Doc. No. 1, at 3, ¶13 (hereinafter "Doc. No. 1")). In Count I of the Complaint, Plaintiff alleges that Defendant's conduct constitutes unlawful discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et al*. (Doc. No. 1, at 4, ¶19). In Count II, Plaintiff alleges that Defendant violated the Pennsylvania Human Relations Act, 43 Pa. Stat. § 955(a). (Doc. No. 1, at 4, ¶21).

On January 4, 2010, Defendant filed a Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and an accompanying Memorandum of Law (Doc. No. 15), a Statement of Material Undisputed Fact (*sic*) in Support of Motion for Summary Judgment (Doc. No. 14), and Exhibits

(Doc. No. 16). On January 18, 2010, Plaintiff filed a Response (Doc. No. 18), a Memorandum in Opposition (Doc. No. 19), and a Counterstatement (*sic*) of Material Disputed Facts (Doc. No. 17). On February 2, 2010, Defendant filed a response to Plaintiff's "Additional Facts" (Doc. No. 31). A hearing on the Motion was held on February 4, 2010.

In the Motion for Summary Judgment, Defendant asserts that Plaintiff has failed to satisfy his burden under the recent Supreme Court decision in Gross v. FBL Financial Services, Inc., __ US __, 129 S.Ct. 2343 (2009), which requires that age be the determinative factor of the discrimination, that Plaintiff has failed to establish a *prima facie* case of age discrimination, and that Defendant has advanced legitimate, nondiscriminatory reasons for terminating Plaintiff which satisfies its burden of production and justifies the granting of summary judgment. (Mem. Law Supp. Def. Mot., Doc. No. 15, at 7-14 (hereinafter "Doc. No. 15")). The Court is persuaded that Plaintiff has met his burdens on the Motion and will deny the Motion in its entirety.

## II. SUMMARY OF THE FACTS

Plaintiff began working for Phelps Buick GMC in February 1998, and became a manager in early 2001. (Def. Statement Mat. Undisp. Fact, Doc. No. 14, at 2, ¶5 (hereinafter "Doc. No. 14"); Pl. Counter-statement of Mat. Disp. Facts, Doc. No. 17, at 1, ¶6 (hereinafter "Doc. No. 17")). In April 2005, Phelps Buick was bought by Geoffrey Penske and became Penske Buick GMC, Inc. (Doc. No. 14, at 2, ¶5). Plaintiff remained as "used car manager" until he was terminated in October 2007. (Id. at 2, ¶5-7). When he was terminated, Plaintiff was 62 years old. (Doc. No. 1, at 2, ¶7).

When Geoffrey Penske purchased the dealership, it was one of the most profitable GM

dealerships in the region. (Mem. Opp. Def. Mot., Doc. No. 19, at 2 (hereinafter "Doc. No. 19")). Shortly after the purchase, however, sales of both new and used cars began to diminish. (Doc. No. 14, at 3, ¶13). Reasons for the decline in business were given by Todd Louviaux, the former general manager at Penske Buick and Plaintiff's former supervisor. Louviaux testified that Geoffrey Penske instituted a number of changes when he purchased the dealership: he substantially increased advertising expenditures; he increased the inventory of new cars; and he changed the bank that the dealership used for financing, all resulting in the dealership having greater expenses and less profit. (Doc. No. 19, at 2; Doc. No. 17, Ex. B, at 47:17- 49:20 (hereinafter "Louv. Dep.")). Moreover, Louviaux also attributed the decrease in profit to the drop in sales across new and used cars, which Louviaux testified should be blamed on "all" the salespeople and managers, as well as the economy. (Louv. Dep., at 51:3 - 53:4, 69:16-20).

Louviaux noted that in the months following Penske's acquisition of the dealership, Penske began to voice complaints about Plaintiff. (Id., at 53:5-15). According to Louviaux, Penske "didn't like [Plaintiff's] energy level. He didn't like the fact that [Plaintiff] was a little bit of a clock watcher. And he always told me that he wished he had somebody that was younger, more energetic, more of a go-getter, and had the same passion that I had." (Id., at 53:15-21). When asked whether Penske "actually use[d] the words, 'I want someone younger,'" Louviaux replied: "Absolutely, he used 'I want somebody younger.' He said, 'I am tired of seeing the guy stand like that. He looks like an old statue (indicating).' He wants somebody younger and more energetic.'" (Id., at 54:23 - 55:5).

In January 2006, Penske changed Plaintiff's pay plan so that his pay was cut by one third in an effort to "get him to go away," because "[h]e wanted somebody younger." (Id., at 66:2-6).

-3-

In October 2006, Penske told Louviaux that he wanted to terminate Plaintiff and another manager. (Id. at 69:4-10). Regarding Plaintiff, Penske wanted to terminate him because of his "age and energy level." (Id.). In response, Louviaux, who was loyal to Plaintiff, threatened to quit. (Louv. Dep., at 69:13-15). Each time Penske raised with Louviaux the issue of terminating Plaintiff, Penske reiterated his "ageist" reasoning: "Penske made specific reference to [Plaintiff's] age and linked it to his intention to terminate [Plaintiff's] employment on multiple occasions." (Doc. No. 19, at 3, n.1).

Penske again raised the issue of Plaintiff's termination with Louviaux at the company Christmas party in December 2006, suggesting that Plaintiff be demoted to a sales position. (Id. at 71:3-20). In response to Penske's suggestion, Louviaux again threatened to resign. (Id.) When Penske returned from his Christmas vacation, he informed Louviaux that he was firing Plaintiff and demoting another employee. (Id. at 72:2-73:14). Louviaux then resigned, but agreed to stay on for another month until Penske could find a replacement. (Id.)

Penske kept Plaintiff on as a manager for nine months after he told Louviaux about his intention to terminate Plaintiff, which resulted in Louviaux's resignation. (Id. at 3-4). As Louviaux explained, "part of the reason I resigned, was because I knew it would buy them time. He couldn't fire [Plaintiff], have me resign, and turn [the demoted employee] into the title clerk. He wouldn't have any managers." (Louv. Dep., at 73:18-22). Victor Popescu, a 41-year-old salesman who Louviaux had been grooming for management, was promoted to sales manager after Louviaux resigned. (Louv. Dep., at 73:12-74:23). On October 19, 2007, Penske finally terminated Plaintiff and offered as his reason for the discharge that the dealership was not doing well, that Plaintiff was one of the more expensive employees and that Penske could not afford to

retain him. (Doc. No. 19, at 4). Penske offered to rehire Plaintiff as a salesperson if business at the dealership increased to a justifiable level. (Id.) Penske retained Popescu as a manager after Plaintiff was terminated, and Popescu assumed Plaintiff's duties. (Doc. No. 19, at 4; Doc. No. 17, Ex. A, Sharp Dep., at 59:16-20).

### III. SUMMARY JUDGMENT STANDARD

Granting summary judgment is an extraordinary remedy. Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Liberty Lobby, 477 U.S. at 247-49.

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009); Bouriez, 585 F.3d at 770. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over

that presented by the moving party.  Liberty Lobby, 477 U.S. at 255.

IV.     **DISCUSSION**

In Count I of the Complaint, Plaintiff alleges a violation of the Age Discrimination in Employment Act, which provides in relevant part as follows:

> It shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a).  The statute limits the prohibition against age-based discrimination to individuals who are at least 40 years of age.  Id. at § 631(a).  Courts have interpreted the statutory language to only protect older employees from discrimination in favor of relatively younger employees, General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 593, 600 (2004), and to protect older employees from discrimination even when the favored, relatively younger employee is a member of the protected age-based class.  O'Connor v. Consolidated Coin Caterers Corp, 517 U.S. 308, 312-13 (1996).  The relevant inquiry is whether the evidence creates an inference of age-based discrimination.  Id.

In order to prove a violation of the ADEA, in the absence of direct evidence of discrimination, a plaintiff must satisfy the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  In that case, the Supreme Court established a burden-shifting framework for discrimination claims brought under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race, color, religion, sex or national origin.  Id. at 802-04.  The ADEA was adopted to prohibit arbitrary age-based

discrimination in employment against older workers, a class not protected by Title VII. 29 U.S.C. § 621. The Third Circuit has adopted and applied a modified version of McDonnell Douglas to ADEA claims. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); see O'Connor, 517 U.S. at 311 (noting, without indicating approval or disapproval, that the McDonnell Douglas framework has been applied by most federal courts of appeals to ADEA claims). The framework has three steps. Id.

First, Plaintiff must establish a *prima facie* case of discrimination by proving the following four elements: (1) Plaintiff is 40 years of age or older; (2) Defendant took an adverse employment action against Plaintiff; (3) Plaintiff was qualified for the position in question; and (4) Plaintiff was replaced by an employee sufficiently younger to support an inference of discriminatory animus. Smith v. City of Allentown, 589 F.3d 684, 689 (2009).

Second, the burden of production shifts to Defendant to "identify a legitimate, nondiscriminatory reason for the adverse employment action." Id., at 690. In the third and final step, Plaintiff:

> may survive summary judgment . . . by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.[1]

Keller, 130 F.3d at 1108. At all times, Plaintiff carries the burden of persuasion. Smith, 589

---

[1]The first prong of this step requires Plaintiff to submit evidence from which a factfinder could reasonably believe the employer's proffered rationale was "pretextual," or a pretext for age-based discrimination. Keller, 589 F.3d at 691.

F.3d at 689.[2]

In Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989), the Supreme Court crafted a different burden-shifting framework for so-called "mixed motive" cases under Title VII. In a "mixed motive" case, a plaintiff need only prove that his or her gender was a motivating, although not a determinative factor, in the defendant's employment decision. Id. Under Price Waterhouse, "once a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." Id.

Following Price Waterhouse, courts applied this new framework for "mixed motive" cases to discrimination claims not specifically covered by Title VII, including claims under the ADEA. E.g., Hill v. Bethlehem Steel Corp., 729 F. Supp. 1071, 1073-74 (E.D. Pa. 1989). Price Waterhouse was superseded as it applied to Title VII claims by amendments in the Civil Rights Act of 1991, which codified the Price Waterhouse framework with some alteration. Watson v. Southeastern Pennsylvania Transportation Authority, 207 F.3d 207, 216 (2000). However, the "mixed motive" framework as established in Price Waterhouse continued to be applied by the Third Circuit and other courts to ADEA claims, e.g., Armbruster v. Unisys Corp, 32 F.3d 768,

---

[2]Plaintiff's claim in Count II under the Pennsylvania Human Relations Act, 43 Pa. Stat. § 955(a) (hereinafter "PHRA") is analyzed under the same standards as the Age Discrimination in Employment Act ("ADEA") claim. Kroptavich v. Pa. Power and Light Co., 2002 Pa. Super. 87 (2002) ("Generally, claims brought under the PHRA are analyzed under the same standards as their federal counterparts."); see Stotlz v. Reese Brothers, 835 A.2d 754, 759 (Pa. Super. 2003) ("While we are not bound by federal courts' interpretation of parallel provisions in . . . (ADEA), 29 U.S.C. §621 et. seq., this Court may interpret the PHRA in accord with its federal counterparts."). Accordingly, the Court's discussion and findings regarding Plaintiff's ADEA claim apply equally to his PHRA claim set forth in Count II of the Complaint.

778 (3d Cir. 1994) (abrogated on other grounds).

However, in Gross v. FBL Financial Services, the Supreme Court recently held that the Price Waterhouse "mixed-motive" burden-shifting framework does not apply to ADEA claims. Instead, the Court held, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." 129 S.Ct. at 2352. The Court was heavily influenced to apply the "but-for" causation test by the language of the Act, which provides that it is unlawful to discriminate against any individual "because of such individual's age." Id. at 2350-51.

After the decision in Gross, the Third Circuit decided Smith v. City of Allentown. 589 F.3d 684 (2009). In Smith, the Court held that the holding in Gross does not disturb the use of the McDonnell Douglas framework in age discrimination cases. Smith, 589 F.3d at 691. The Third Circuit reasoned:

> Throughout [the McDonnell Douglas] burden-shifting exercise, the burden of persuasion . . . remains on the employee. . . Hence, Gross, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying McDonnell Douglas to age discrimination cases. Decisions of our sister circuits are in accord.

Id. at 691 (internal quotation marks and citation omitted)). See also Ferruggia v. Sharp Electronics Corp., 2009 WL 2634925, *3 (D. N.J. 2009) ("The majority of courts that have addressed this issue post-Gross continue to apply the McDonnell Douglas framework at the summary judgment stage while also recognizing that at trial the plaintiff bears the burden of persuasion to prove that discrimination was the but for cause of the adverse employment action.")

In this case, Defendant first asserts that Plaintiff has failed to meet his burden under the Supreme Court's ruling in Gross. (Doc. No. 15, at 7-8). Defendant contends that Plaintiff's case is built upon a "mixed motive" theory which can no longer be applied in ADEA cases after Gross, and that Plaintiff has failed to establish that his age was the "but-for" determinative factor in Defendant's decision to terminate him. (Id.)[3] Second, Defendant argues that Plaintiff has failed to establish a *prima facie* case, by failing to establish the fourth element of an age discrimination claim, which requires that a plaintiff prove he was replaced by a sufficiently younger worker to permit an inference of discriminatory animus. (Id. at 14-15). Finally, Defendant asserts that it had a legitimate, non-discriminatory reason for terminating Plaintiff and that Plaintiff has failed to submit evidence to persuade the court that Defendant's proffered reason should be disbelieved or that a discriminatory reason was more likely than not a motivating cause of Defendant's decision to terminate Plaintiff. (Id. at 9-14).

First, viewing the facts in the light most favorable to Plaintiff as the non-moving party, Plaintiff has established the four elements of an age discrimination *prima facie* case. Plaintiff is over 40 years of age and was the subject of an adverse employment action. (Doc. No. 1, at 2, ¶¶ 7,11 (noting Plaintiff was born in 1945 and was terminated October 19, 2007)). Plaintiff was qualified for his position. (Sharp Dep., at 8:21-9:19, 18:16-19, 25:15-23 (indicating Plaintiff had been working in automobile sales since 1981, and that he had been working as used car manager

---

[3] Defendant correctly notes that, under Gross, Plaintiff cannot prevail on a mixed-motive theory. Gross, 129 S. Ct. at 2346, 2351. As discussed below, however, Plaintiff has presented sufficient evidence to satisfy the "but-for" test and the McDonnell Douglas framework and establish the existence of genuine issues of material fact.

at the Phelps and then Penske dealerships from 1998-2007)).[4] He was replaced by a sufficiently younger person to create an inference of age discrimination. (Id. at 59:16-20; Doc. No. 17, Ex. D, Popescu Dep., at 5:24-25 (hereinafter "Popescu Dep.") (indicating that after Plaintiff was terminated, Popescu, who is 41 and was also a manager, assumed Plaintiff's duties)).[5]

Second, in accordance with the McDonnell Douglas shifting framework discussed above, Defendant has proffered a legitimate, nondiscriminatory reason for terminating Plaintiff and satisfied its burden of production. Defendant asserts that Penske believed, in good faith, that Plaintiff played a large part in the financial loss his dealership experienced in 2007: "The used car profits were down, and Michael Sharp was the Used Car Manager. . . A decision was made that the dealership could run effectively with one less Manager, and Michael Sharp had positioned himself, in the mind of the dealership's owner, as the best way to save money." Def. Mem. Supp. Mot. Sum. J., 11. In addition, Defendant notes as factors supporting its decision that Plaintiff was a "clock-watcher, with low energy, something certainly not desirable

---

[4] Defendant asserted for the first time at the hearing held on February 4, 2010, that Plaintiff was not qualified for the position on the theory that at the time of Plaintiff's termination, the dealership only needed one manager, and Plaintiff was not qualified for that position. Defendant argues that its claim is supported by the testimony of Todd Louviaux, who, in describing Plaintiff, stated: "'He's not a number 1,' meaning, you know, if you had quarterbacks, he's not your starter." (Louv. Dep., at 53:23-24). Defendant's argument, however, is belied by the fact that Plaintiff worked as used car manager at the Phelps and then Penske dealership for nine years before his termination, (Sharp Dep. at 25:15-23) and that Defendant increased Plaintiff's salary after Louviaux resigned (statement of Defense Counsel at hearing on February 4, 2010).

[5] The Third Circuit has held that the fourth element "must be relaxed in certain circumstances, as when there is a reduction in force," and that the element is satisfied where similarly situated younger employees who were retained in their positions assumed plaintiff's duties. Torre v. Casio, Inc., 42 F.3d 825, 831 (3d Cir. 1994); see Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 357 (3d Cir. 1999) (applying Torre).

in a car salesman." Id.

The next question to consider is whether Plaintiff has submitted sufficient evidence under the McDonnell Douglas burden-shifting framework to convince a factfinder that either Defendant's nondiscriminatory reason was pretextual or that discrimination was more likely than not a determinative cause of Defendant's action. Keller, 130 F.3d at 1108. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that a factfinder could reasonably believe that age discrimination was more likely than not a determinative cause of Defendant's action, that Defendant's nondiscriminatory reason for the firing was pretextual and that genuine issues of material fact exist. Two factors compel this conclusion: 1) Plaintiff has submitted evidence that on at least four separate occasions, Penske told Todd Louviaux that he wanted to terminate Plaintiff because of Plaintiff's age; and 2) Plaintiff has submitted evidence that Penske's management and the economy, not Plaintiff's performance, caused the dealership's profits to decline. (Doc. No. 19, at 2-4).

On multiple occasions over the course of months, Penske made adverse comments to Louviaux about Plaintiff's age and linked those comments to his intention to terminate Plaintiff. Louviaux testified at his deposition that Penske said in regard to Plaintiff, "I want someone younger," that Penske discussed his desire to replace Plaintiff with a younger and more energetic employee in January, October and December 2006, and in January 2007, and that each time Penske raised the issue of terminating Plaintiff, he reiterated his "ageist" reasoning. (Louv. Dep., 54:23-55:5; 66:2-6; 69:4-10; 71:2072:2-73:14; Doc. No. 19, at 3, n.1).

In both Baker and Roach v. American Radio Systems Corp, courts in the Eighth Circuit and Western District of Pennsylvania respectively considered comments by defendant-employers

"evincing a preference for the employment of younger workers over persons in the class protected by the ADEA," and held the comments were evidence that discrimination was the determinative factor in the defendant's adverse employment decision. 581 F.3d 684, 688 (8th Cir., 2009); 80 F. Supp. 2d 530, 533 (W.D. Pa., 1999). In Roach, the court considered evidence that the defendant-employer, a radio station, lowered its target audience median age range, that shortly thereafter managers made comments on two separate occasions to the effect that plaintiff-employee and another employee were "old sounding," and that both employees were terminated within seven months of the station's target age being lowered while younger employees were retained. 80 F. Supp. 2d at 533. In Baker, the Eighth Circuit found statements by managers evincing a preference for "younger, more vibrant people," to be the facts "most significant" to its holding that plaintiff submitted sufficient evidence to survive summary judgment.[6]

When viewed in the light most favorable to Plaintiff, the evidence here is similar to the evidence found sufficient to defeat summary judgment in Roach and Baker: Penske repeatedly stated that he wanted to replace Plaintiff with a "younger and more energetic" employee and thereafter terminated Plaintiff while replacing him with a similarly situated younger employee. The delay between Penske's last reported statement regarding Plaintiff's age and the date of Plaintiff's termination is slightly longer than the delay in Roach and may be attributed to the resignation of Louviaux and the added time Penske needed to train a replacement. Under the circumstances, the delay in terminating Plaintiff does not dissipate the discriminatory animus of

---

[6]The Baker court also discussed evidence indicative of pretext, and reasoned that when the evidence of pretext was viewed together with evidence of a discriminatory attitude towards older employees, the evidence as a whole was sufficient to survive summary judgment. 581 F.3d at 689.

Penske.

In addition to evidence that Penske made reference to Plaintiff's age when discussing his intent to terminate Plaintiff on multiple occasions, Plaintiff has also submitted evidence from which a jury could reasonably disbelieve Defendant's nondiscriminatory reasons for the firing. Louviaux testified that the changing economy and Penske's financial changes to the way the dealership was run, rather than Plaintiff's performance, were the reasons for the dealership's decline in profits.[7]

In considering Plaintiff's showing of pretext, the Court must heed the Third Circuit's caveat that,

> to discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer. . . rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Keller, 130 F.3d at 1108-09.

Here, Plaintiff is not simply claiming that Defendant's reasoning is wrong or mistaken. Todd Louviaux testified extensively about the financial changes implemented by Penske after his acquisition of the dealership. Louviaux testified with great specificity about the impact those changes had on the dealership's decline in profit. (Louv. Dep., at 42:23-45:16, 46:18-53:4, 95:6-

---

[7]Plaintiff also submits evidence that Popescu was a more highly compensated employee at the time of Plaintiff's termination (Sharp Dep., at 50:7-19 (indicating that Popescu received $50 per week more in base pay)), suggesting that this salary differential undermines Defendant's proffered explanation that Plaintiff was being terminated because Defendant could not afford to retain him (Id., at 49:18-20). Although this fact may be entitled to some weight with a jury, it is not really a critical factor to establish pretext at the summary judgment stage.

101:8, 108:7-113:20, 118:4-119:12 ("Forget about the lack of sales, [Penske] was only bringing two tenths of one percent to the bottom line, because of his expense structure," compared to 4.5% to the bottom line when Phelps owned the dealership)). Louviaux insisted that Penske's financial changes, the economy and the price of gas caused the dealership's drop in profits, not the performance of the staff: "my sales force all of a sudden didn't go in the tank. They were all the same guys." (Id. at 112:23-25).

Furthermore, Louviaux testified that he had numerous conversations with Penske about the effect his policies were having on profits. (Id. at 118:22-25 ("Overhead was an ongoing concern . . . as statements came out and there were more brackets around the profit figures, those discussions became more and more frequent")). Louviaux also testified that he did not believe Penske's claim that Plaintiff was responsible for the decrease in sales. (Id. at 69:16-70:6). Viewing all of this evidence together, a factfinder could reasonably disbelieve Penske's assertion that Plaintiff was responsible for the drop in sales and profits, and believe that age discrimination was more likely than not the reason for the termination.

One final argument of Defendant deserves discussion. Defendant asserts that its nondiscriminatory reason is corroborated by Plaintiff's witness, Todd Louviaux, in his deposition testimony. (Doc. No. 15, at 11). Louviaux corroborated that Plaintiff would leave work at the end of his shift, but that, "If he was in the middle of an appraisal or closing a deal, he wouldn't leave." (Louv. Dep., at 57:14-15). Louviaux stated that once, he had Dan Phelps, the prior owner of the dealership, tell Plaintiff that "he can't just walk out in the middle of -- after he is done appraising a car and leave me hanging." (Id., at 58:2-5). Louviaux also said he had problems with Plaintiff coming in on the last day of the month if it was Plaintiff's scheduled day

off, and that he "would be miserable, just like I would be." (Id., at 59:21-22). While this testimony corroborates reasons advanced by Defendant for terminating Plaintiff and is relevant to Defendant's burden of production under the shifting paradigm of McDonnell Douglas, it is not conclusive that age discrimination was not a determinative factor for the firing. A jury must determine whether to credit all or part of Louviaux's testimony together with the other evidence offered in the case.

When Louviaux's testimony regarding Penske's management decisions and the economy is viewed in conjunction with Penske's repeated comments about Plaintiff's age, the evidence as a whole is sufficient to allow a factfinder to reasonably conclude that Defendant's nondiscriminatory reason was pretextual and that discrimination was more likely than not a determinative cause of Defendant's action. Penske's repeated statements about age animus satisfy the "but-for" test and Plaintiff's burden to show at this stage that he was fired because of his age. Genuine issues of material fact therefore exist. Accordingly, Defendant's Motion for Summary Judgment will be denied on both counts. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL T. SHARP, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 09-1110 |
| v. | : | |
| PENSKE BUICK GMC, INC., | : | |
| Defendant. | : | |

## **ORDER**

AND NOW, this 18th day of February, 2010, upon consideration of Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and accompanying Memorandum of Law (Doc. No. 15), Defendant's Statement of Material Undisputed Fact (*sic*) in Support of Motion for Summary Judgment (Doc. No. 14), Defendant's Exhibits (Doc. No. 16), Plaintiff's Response (Doc. No. 18), Plaintiff's Memorandum in Opposition (Doc. No. 19), Plaintiff's Counterstatement (*sic*) of Material Disputed Facts (Doc. No. 17), Defendant's Response to Plaintiff's "Additional Facts" (Doc. No. 31), and Arguments of Counsel on the Motion at the Hearing held on February 4, 2010, and after a complete and independent review of all pleadings, motions and exhibits, which include deposition testimony and other discovery submitted by the parties, it is hereby **ORDERED** that Defendant's Motion (Doc. No. 15) is **DENIED** in its entirety.

BY THE COURT:

  /s/ Joel H. Slomsky, J.
JOEL H. SLOMSKY, J.